**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3866
_____

HAROLD BEAUVAIS,
                                        Petitioner
v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A026-029-563)
Immigration Judge:  Honorable Andrew Arthur

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 23, 2011
Before:  SLOVITER, FISHER and WEIS,  Circuit Judges
Opinion filed July 27, 2011
_____

OPINION
_____

PER CURIAM.

        Harold Beauvais, proceeding pro se, petitions for review of the Board of

Immigration Appeals' ("BIA") order upholding the Immigration Judge's ("IJ") decision

ordering his removal to Haiti and denying his application for deferral of removal under

the Convention Against Torture ("CAT").  For the reasons that follow, we will deny the

petition for review.

## I.

Beauvais is a citizen of Haiti who entered the United States in 1983 as a refugee. He obtained lawful permanent resident status in 1992. In 2002, Beauvais was convicted in the United States District Court for the Southern District of Florida of possession with intent to distribute more than 50 grams of cocaine base, and he was sentenced to 240 months' imprisonment. The Department of Homeland Security initiated removal proceedings against Beauvais in 2008, and he filed an application for asylum, withholding of removal, and CAT protection. The Immigration Judge found Beauvais removable based on his drug conviction, which constituted both an aggravated felony and a controlled substances violation, and concluded that the conviction rendered Beauvais ineligible for asylum or withholding of removal.

In his application for CAT protection, Beauvais alleged that, because of his prior affiliation with a paramilitary group known as "Defacto,"[1] he was in danger of being killed. Before the IJ, Beauvais testified that he originally left Haiti because thefts and mistreatment by the Macoutes made life difficult. AR 123. After obtaining

---

[1] Before the IJ, Beauvais explained that "Defacto" is used interchangeably with the name "Lavalas," which he identified as the party of former-President Aristide. Likewise, Beauvais explained that the Convergence party, which is opposed to Defacto/Lavalas, is associated with the Ton Ton Macoutes ("Macoutes"), and that those terms are also used interchangeably. For convenience, and to avoid confusion, we will refer to the groups as "Defacto" and "Macoutes." However, we note that there exists some authority indicating that these groups are not necessarily so well-defined. See, e.g., Civil v. INS, 140 F.3d 52, 60 n.9 (1st Cir. 1998) (describing the evolution of groups related to the Macoutes).

permanent resident status in the United States, Beauvais returned to Haiti several times to visit family. He alleged that two visits in particular demonstrated a likelihood that he would be harmed if he is removed to Haiti.

Beauvais testified that he visited Haiti sometime in 1999 or 2000. During this trip, he witnessed the murder of his cousin, Ti Will. AR 138. Beauvais explained that Ti Will was a Macoutes, and that he was killed on the street by an unidentified Defacto member. AR 142. When Beauvais became visibly upset, someone in the crowd threatened that he would face similar treatment for showing sympathy to a Macoutes. Id. Beauvais stated that he was staying with his mother at the time, but had to leave because, for several days following Ti Will's death, unknown individuals threw rocks at the house in the middle of the night. AR 142-44. He then hid at his godmother's home until his return to the United States several days later. AR 145. Beauvais explained that although he was initially a Defacto supporter, his cousin's murder caused him to support the Macoutes. AR 153.

Beauvais testified that he returned to Haiti for three months in 2002 -- his last trip before being arrested in the United States -- and faced further problems. Beauvais stated that, while in the United States, he occasionally sent food, supplies, and money to his cousin, Jocelyn, who had a leadership role in a political party. He initially testified that, upon his arrival in Haiti, he was told that Macoutes members were after him because they learned that he was providing support to Defacto through Jocelyn. AR 130-

3

32, 147-48. Later, Beauvais testified that Jocelyn was a Macoutes member, and that Defacto party members, not Macoutes, sought to harm him. AR 154. Because he felt threatened, Beauvais had to hide out in different places throughout his stay in Haiti. AR 132-35. Beauvais further testified that Jocelyn was killed sometime around 2007 or 2008, presumably because of political party conflicts, and that he fears the same will happen to him. AR 146-47.

Beauvais testified further that he had never been arrested while in Haiti. AR 156. On cross-examination, however, the Government noted that Beauvais's 1983 asylum application indicated that he was arrested for disturbing the peace and jailed for three months. AR 168, 211. When asked to explain the inconsistency, Beauvais said that he did not testify about his arrest and detention because it "happened [a] long, long time ago." AR 168.

Beauvais also submitted the supporting testimony of three fellow inmates, though none had any first-hand knowledge of Beauvais's experiences in Haiti. The IJ denied relief, reasoning that Beauvais was incredible, and that, notwithstanding the adverse credibility determination, Beauvais had failed to meet the standard for obtaining CAT relief.

Beauvais appealed to the BIA, and his notice of appeal appeared to challenge only the IJ's adverse credibility determination. See AR 43-45. The BIA dismissed the appeal, upholding the IJ's adverse credibility determination. Beauvais timely filed this petition

for review.

## II.

We have jurisdiction pursuant to 8 U.S.C. § 1252(a). Because the BIA issued its own opinion, we review its decision rather than that of the IJ. See Li v. Att'y Gen., 400 F.3d 157, 162 (3d Cir. 2005). However, we also look to the decision of the IJ to the extent that the BIA deferred to or adopted the IJ's reasoning. See Chavarria v. Gonzalez, 446 F.3d 508, 515 (3d Cir. 2006). We review the Agency's factual determinations, including adverse credibility determinations, for substantial evidence, upholding them unless any reasonable adjudicator would be compelled to reach a contrary conclusion. See Fiadjoe v. Att'y Gen., 411 F.3d 135, 153 (3d Cir. 2005).

Beauvais bore the burden of demonstrating, through credible evidence, his entitlement to protection under the CAT. See 8 C.F.R. § 1208.16(c). Because Beauvais filed his application in 2010, it is governed by the REAL ID Act of 2005. Under the REAL ID Act, an IJ must evaluate an applicant's credibility under the totality of the circumstances and consider all relevant factors, including:

> the demeanor, candor, or responsiveness of the applicant . . . ,
> the inherent plausibility of the applicant's . . . account, the
> consistency between the applicant's . . . written and oral
> statements (whenever made and whether or not under oath,
> and considering the circumstances under which the statements
> were made), the internal consistency of each such statement,
> the consistency of such statements with other evidence of
> record . . . , and any inaccuracies or falsehoods in such
> statements, without regard to whether an inconsistency,
> inaccuracy, or falsehood goes to the heart of the applicant's

5

claim, or any other relevant factor.

8 U.S.C. § 1158(b)(1)(B)(iii).  In this case, the IJ reasoned -- and the BIA agreed -- that inconsistencies in Beauvais's testimony, as well as inconsistencies between his testimony and applications for relief, indicated a lack of credibility.

The IJ first noted that Beauvais provided inconsistent testimony concerning which political party he and his cousin, Jocelyn, supported, and which party sought to harm Beauvais.  Moreover, Beauvais's testimony was inconsistent with the claim for relief in his application.  His testimony suggested that he faced problems in Haiti and fears additional trouble because he showed support for his cousins, who were Macoutes.  However, Beauvais claimed in his 2010 asylum application that he had enemies in Haiti because of his earlier affiliation with the opposition Defacto paramilitary group.

Finally, the IJ noted that Beauvais denied ever being arrested in Haiti, despite having been arrested and detained for three months on charges that Beauvais testified were unwarranted.  See AR 168-69, 211.  The IJ reasonably questioned this inconsistency, as well as Beauvais's explanation for failing to mention his arrest and detention, given that the arrest served as the basis for his original asylum application. See AR 211.

Given these significant discrepancies in Beauvais's testimony, we are not compelled to conclude that the BIA and the IJ erred in finding Beauvais incredible. Accordingly, we will deny the petition for review.

6